IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,

     **v.**                                   Criminal Case No. 3:16cr103-1

DIKEMBWE JA-HAAN AKIL JONES,

     **Defendant.**

## MEMORANDUM OPINION

This matter comes before the Court on two motions: (1) Defendant Dikembwe Ja-Haan Akil Jones's *pro se* Motion to Reduce Sentence Pursuant to 18 U.S.C. § 924(c) and 18 U.S.C. § 3582(c)(1)(A)(i) for Immediate Compassionate Release Due to COVID-19 Circumstances (the "*pro se* Motion"), (ECF No. 139)[1], and Mr. Jones's counseled Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (the "Motion for Compassionate Release"), (ECF No. 167). The United States responded in opposition and Mr. Jones replied. (ECF Nos. 174, 175.)

This matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons articulated below, the Court will deny the Motion for Compassionate Release. (ECF No. 167.) The Court will deny as moot Mr. Jones's *pro se* Motion for Compassionate Release. (ECF No. 139.)

---

[1] Mr. Jones filed two identical Motions for Compassionate Release. (*See* ECF Nos. 139, 140.) The Court will deny Mr. Jones's second *pro se* Motion, (ECF No. 140), as moot.

# I. Background

**A.    Mr. Jones's Underlying Offense**

On September 6, 2016, Mr. Jones was charged in a three-count indictment:  one count of using force and violence, or intimidation, to take proceeds of businesses that participate in interstate commerce ("Hobbs Act Robbery"), in violation of 18 U.S.C. §§ 1951 and 2 (Count One); one count of using, carrying, or possessing a firearm during and in relation to or in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 924(c) and 2 (Count Two); and one count of possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 2. (ECF No. 23, at 1–3.)  On November 14, 2016, Mr. Jones entered into a written plea agreement with the United States in which he pleaded guilty to Hobbs Act Robbery (Count One) and "carrying and using, by brandishing, and possessing a firearm during and in relation to and in furtherance of a crime of violence" (Count Two).  (ECF No. 32 ¶ 1.)

The Plea Agreement and the Statement of Facts describe the conduct underlying Mr. Jones's offenses.  (ECF Nos. 32, 33.)   On May 12, 2016, Mr. Jones and his three co-conspirators entered a Walgreens in Henrico, Virginia.  (ECF No. 33 ¶ 4.)  All four men wore masks.  (ECF No. 33 ¶ 4.)  Two co-conspirators demanded that D.R., the store employee at the front counter, hand over money from both cash registers.  (ECF No. 33 ¶ 4.)  The two yelled and cursed at D.R., urging her to move faster and beginning to count down from five; D.R. complied. (ECF No. 33 ¶ 4.)  One of the men pointed a firearm at D.R., and the pair threatened to shoot her if she "touched any buttons."  (ECF No. 33 ¶ 4.)  After stealing D.R.'s iPhone and money from two cash registers, the two men ordered her onto the floor.  (ECF No. 33 ¶ 4.)

Meanwhile, the other two co-conspirators walked to the pharmacy area at back of the store, where they encountered a second employee, C.D.  (ECF No. 33 ¶ 5.)  One co-conspirator

jumped over the counter where C.D. stood, pointed a black firearm at her, and demanded money from the cash registers. (ECF No. 33 ¶ 5.)  The co-conspirator without the firearm said to "cap this b**ch," and the co-conspirator with the firearm placed said firearm to C.D.'s head, demanded that she open the cash registers at the pharmacy's drive-through window, and counted down while telling her to hurry. (ECF No. 33 ¶ 5.)  After C.D. complied, the two men told her to get on the floor and then fled. (ECF No. 33 ¶ 5.)  In total, the four co-conspirators stole approximately $480.00. (ECF No. 33 ¶ 5.)

Four days later, on May 16, 2016, the same four men robbed another Walgreens Pharmacy store, this time in Durham, North Carolina. (ECF No. 33 ¶ 6.)  Mr. Jones's three co-conspirators entered the store wearing masks and blue latex gloves. (ECF No. 33 ¶ 6.)  One co-conspirator pointed a firearm at M.S., an employee at the store's front counter, and demanded money from the cash registers. (ECF No. 33 ¶ 6.)  After stealing the register funds and M.S.'s wallet, the co-conspirator instructed M.S. to open a safe and cash register in the store's "photo center." (ECF No. 33 ¶ 6.)  Simultaneously, the second and third co-conspirators went to the pharmacy at the store's rear, where they jumped the counter and pointed a firearm at a pharmacist, P.T. (ECF No. 33 ¶ 6.)  They stole P.T.'s cell phone and demanded that P.T. open the cash registers and give them Percocet and Vicodin from the pharmacy. (ECF No. 33 ¶ 6.)  P.T. complied, giving them one bottle of Oxycodone and four bottles of Vicodin in a Walgreens bag. (ECF No. 33 ¶ 6.)  They then ordered P.T. to the "photo center," forcing him to get on the floor with M.S. (ECF No. 33 ¶ 6.)  The three men fled the store with money and medication totaling $4,814.42 in value. (ECF No. 33 ¶ 6.)

During this second robbery, the three co-conspirators did not notice a third employee, who escaped to the store's main office and called police. (ECF No. 33 ¶ 7.)  A Durham police

3

officer arrived on the scene and witnessed an orange Plymouth Neon leaving the area.  (ECF No. 33 ¶ 7.)  The officer saw that the car held four male occupants and bore Virginia license plates. (ECF No. 33 ¶ 7.)  The officer stopped the vehicle, which Mr. Jones was driving, and observed, in plain view within the car, a black and silver firearm, blue latex gloves, currency, and a plastic Walgreens bag containing prescription bottles matching those reported stolen.  (ECF No. 33 ¶ 7.) A search of the vehicle yielded one bottle of Oxycodone, four bottles of Vicodin, U.S. currency, M.S's identification and bank cards, blue latex gloves, one black 9mm handgun, and one black and silver 9mm handgun.  (ECF No. 33 ¶ 8.)  Mr. Jones and his co-conspirators were subsequently arrested.  (ECF No. 33 ¶ 9.)

On May 24, 2016, during an interview with the Federal Bureau of Investigation, Mr. Jones admitted to owning the Plymouth Neon and that this was the vehicle used when he "did dirt."  (ECF No. 33 ¶¶ 9–10.)  Mr. Jones identified himself, by photo, from the Laburnum Avenue Robbery.  (ECF No. 33 ¶ 10.)

Furthermore, Mr. Jones confessed to participating in five additional robberies or attempted robberies in the Eastern District of Virginia and two more robberies in North Carolina. (ECF No. 33 ¶¶ 10–11.)  Each robbery, which occurred between April 26, 2016 and May 16, 2016 involved actual and threatened force, violence, and fear of injury to an employee by brandishing a firearm.  (ECF No. 33 ¶¶ 10–11.)  Mr. Jones admitted that a firearm was brandished during each of these eight robberies and the robbery attempt during that one-month time frame.  (ECF No. 33 ¶¶ 10–11.)

### B.    Mr. Jones's Original Guidelines Computation and Plea Agreement

Prior to sentencing, the probation officer prepared the Presentence Report ("PSR") for Mr. Jones, summarizing his offense level and criminal history.  (ECF No. 55.)   Mr. Jones's

Combined Adjusted Offense Level subtotaled 34, but he received a three-point reduction pursuant to U.S.S.G §§ 3E1.1(a) and (b), resulting in a Total Offense Level of 31. (ECF No. 55 ¶¶ 81, 84–86.)

Mr. Jones's prior criminal convictions resulted in a subtotal criminal history score of 3. (ECF No. 55 ¶ 92.) He received a two-point enhancement for "commit[ing] the instant offense while under terms of good behavior and probation" pursuant to the then-applicable U.S.S.G. § 4A1.1(d),[2] resulting in a total criminal history score of 5 and a Criminal History Category of III. (ECF No. 55 ¶¶ 93–94.) Mr. Jones's Criminal History Category and Total Offense Level yielded a Sentencing Guidelines range of 135 to 168 months' imprisonment on Count One.[3] (ECF No. 55, at 27.) Count Two carried a mandatory minimum of 84 months' imprisonment to be served consecutively to any other term imposed, resulting in a Guideline Range of 219 to 252 months' imprisonment. (ECF No. 55, at 27; *see* ECF No. 55 ¶ 83.)

---

[2] In the 2023 Criminal History Amendments to the United States Sentencing Guidelines, Part A of Amendment 821 (status points under § 4A1.1) and Part B of Amendment 821 (Zero-Point Offenders) changed this guideline and did so, importantly, retroactively. What is now U.S.S.G. § 4A1.1(e) — relative to the former § 4A1.1(d) — can reduce the number of points applicable to an offender's criminal history when the offense was committed while under a criminal justice sentence.

If sentenced today, Mr. Jones would not receive additional status points, thereby reducing his criminal history points to 3 and his Criminal History Category to II. (*See* ECF No. 201, at 2.) This would reduce Mr. Jones's sentencing guidelines to 121 to 151 months on Count One, plus 84 months' imprisonment to be served consecutively on Count Two, for a total recommended sentencing guidelines range of 205 to 235 months imprisonment. (ECF. No. 201, at 2.) For the reasons articulated below, while Mr. Jones is eligible for a sentence reduction pursuant to Amendment 821, the Statutory Sentencing Factors listed in 18 U.S.C. § 3553(a) do not support a reduction in Mr. Jones's sentence.

[3] Count One carried a statutory maximum term of twenty years' imprisonment. (ECF No. 55, at 27.)

In his Fed. R. Crim. P. 11(c)(1)(C) binding Plea Agreement, Mr. Jones agreed to a prison term of "324 months' incarceration, composed of a sentence of 240 months' incarceration on Count One to run consecutive to 84 months' incarceration on Count Two," exceeding the upper bounds of his Guidelines range. (ECF No. 32 ¶ 3.)  On February 22, 2017, this Court accepted Mr. Jones's plea and imposed the agreed-upon 324 months' imprisonment. (ECF No. 81, at 2.) The Court also ordered three years of supervised release following Mr. Jones's prison term, comprising three years' supervision on Count One and three years' supervision on Count Two, to be served concurrently. (ECF No. 81, at 3.)

As of December 20, 2024, Mr. Jones has served 103 months and 4 days of his 324-month term of imprisonment, or approximately thirty-two percent of his sentence. (*See* ECF No. 55, at 1.)  Mr. Jones is currently housed at FCI Williamsburg in Salters, South Carolina. *Fed. Inmate Locator*, BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited December 20, 2024). The Bureau of Prisons ("BOP") lists Mr. Jones's projected release date as May 18, 2039. *Id.*

### C.   Mr. Jones's Motion for Compassionate Release

Mr. Jones, acting through counsel, filed the instant Motion for Compassionate Release, incorporating his previously filed *pro se* motions by reference. (ECF Nos. 167, 139, 140.)  Mr. Jones requests that this Court "reduc[e] his sentence to time served based on the COVID-19 pandemic as well as underlying health issues." (ECF No. 167, at 1.)  Mr. Jones asserts that he has "satisfie[d] the 'extraordinary and compelling reasons' standard under 18 U.S.C. § 3582(c)(1)(A)(i)." (ECF No. 167, at 1.)

In the instant Motion, Mr. Jones contends that two reasons exist to find extraordinary and compelling reasons for his release:  (1) his health conditions place him at severe risk if he were

to contract COVID-19 while incarcerated; and (2) the changes made to the "stacking" provision

of 18 U.S.C. 924(c).  (ECF No. 167, at 1, 5; ECF No. 175, at 1.)

### 1.    Mr. Jones's Medical Circumstances

In his *pro se* Motion, Mr. Jones informs the Court that he was "diagnosed with Asthma

shortly after birth and has been treated for severe Asthma all his life."  (ECF No. 139, at 3.)  His

asthma is being treated with two different inhalers, an Asmanex Twisthaler and an Abuterol

Inhaler.  (ECF No. 139, at 3.)  In both the *pro se* and counseled Motions, Mr. Jones describes

how asthma makes him particularly susceptible to complications and severe infection from

COVID-19.  (ECF No. 139, at 2–6; ECF No. 167, at 1–3.)

### 2.    Changes to Sentencing Practices

Second, although Mr. Jones entered into a binding plea agreement with the United States

prior to his sentencing, he avers that "given the various decisions concerning stacking 924([c])

charges, it is not at all clear that [Mr.] Jones would have received a sentence of 324 months, even

if charged and/or convicted of some or all of the other robberies."  (ECF No. 167, at 5.)  Mr.

Jones argues that, despite being charged with only a single violation under 18 U.S.C. § 924(c)[4],

the Court should find an extraordinary and compelling reason for his release in the recent

prohibition on stacking such charges.  (*See* ECF No. 167, at 5; ECF No. 175, at 1.)  Mr. Jones

further contends that:

> The plea was negotiated between the parties with the underlying assumption that
> stacking the firearm sentences would occur if the case went to trial or [Mr.] Jones
> would plead guilty without a plea agreement.  Thus, the 240 months was negotiated
> and considered fair in those circumstance[s].  However, now that that assumption

---

[4] "Offenses under 18 U.S.C. § 924(c) involve the use or carrying of a firearm during and in relation to a crime of violence or drug trafficking crime, or the possession of a firearm in furtherance of those crimes." *Section 924(c) Firearms*, U.S. SENT'G COMM'N, https://www.ussc.gov/research/quick-facts/section-924c-firearms (last visited December 20, 2024).

has been altered, and stacking does not occur, reconsideration should be given. He would never have negotiated a plea for 240 months plus the 84, since his guidelines were 135–168. If this Court would have deviated upwards to 240 months plus the 84, on a guilty plea without an agreement, then so be it. If, however, the Court would have stayed within the guidelines, then it would be appropriate in this situation to reduce [Mr.] Jones'[s] sentence from 240 months to 158 months, with the 84 months for the firearm to remain consecutive.

(ECF No. 175, at 1.)

### 3.    The Effect of § 3553(a) Statutory Sentencing Factors

Finally, Mr. Jones contends that the Statutory Sentencing Factors listed in 18 U.S.C.

§ 3553(a)[5] support a substantial reduction of his sentence. (ECF No. 139, at 37–38.) Mr. Jones

---

[5] Section 3553(a) of Title 18 of the United States Code states, in pertinent part:

The court, in determining the particular sentence to be imposed, shall consider—

    (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2) the need for the sentence imposed—

        (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        (B) to afford adequate deterrence to criminal conduct;

        (C) to protect the public from further crimes of the defendant; and

        (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

    (3) the kinds of sentences available;

    (4) the kinds of sentence and the sentencing range established for—

        (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .

    (5) any pertinent policy statement—

argues that (1) his efforts toward rehabilitation speak positively to his history and characteristics; and (2) "[h]e sincerely believes that he can now be placed back in society and live as a humble, law abiding citizen." (ECF No. 139, at 38.)  Mr. Jones further avers that "granting the requested reduction will not jeopardize the public safety." (ECF No. 139, at 38.)

### 4.   The United States's Response

In its opposition, the United States contends that because Mr. Jones did not previously raise multiple arguments on which his instant Motion for Compassionate Release relies, he has not exhausted his administrative remedies and should be precluded from raising a novel claim with the Court. (ECF No. 174, at 8–18.)  Specifically, the United States asserts that Mr. Jones did not exhaust administrative remedies because, in his November 2020 administrative request, he "did not argue, as he now claims in his motion, that he should receive relief due to the 'stacking' of 18 U.S.C. § 924(c) charges." (ECF No. 174, at 12.)

In the alternative, the United States argues that, even if Mr. Jones had exhausted administrative remedies, Mr. Jones "has not established a particularized risk of contracting COVID-19 at his facility" and his § 924(c) sentence fails to establish extraordinary and compelling reasons for Mr. Jones's release. (ECF No. 174, at 18, 28.)  Furthermore, the United States contends that "the statutory sentencing factors [in 18 U.S.C. § 3553(a)] do not support compassionate release." (ECF No. 174, at 32.)

---

(A) issued by the Sentencing Commission . . .

     (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

     (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

**5.** **Mr. Jones's Reply**

In his reply, Mr. Jones provides that "[t]he plea was negotiated between the parties with the underlying assumption that stacking the firearm sentences would occur if the case when to trial . . . [but h]e would never have negotiated a plea for 240 months plus the 84" otherwise. (ECF No. 175, at 1.)

## II. Compassionate Release Under the First Step Act of 2018

**A.** **Legal Standard**

Prior to the First Step Act of 2018, an individual could not petition the district court for relief on compassionate release grounds without approval from the BOP. *See Coleman v. United States*, 465 F. Supp. 3d 543, 546 (E.D. Va. 2020). In 2018, Congress enacted the First Step Act to provide incarcerated individuals the opportunity to directly petition the courts for compassionate release under 18 U.S.C. § 3582(c)(1)(A).[6] First Step Act of 2018, Pub. L. No.

---

[6] Section 3582(c) states, in pertinent part:

The court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case—

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

115–391, 115th Cong. (2018).  Under the First Step Act, criminal defendants may petition courts on their own initiative to modify their sentences.  *Coleman*, 465 F. Supp. 3d at 546.

Before granting a reduction, courts must consider the factors set forth in 18 U.S.C. § 3553(a), *see* 18 U.S.C. § 3582(c)(1)(A), and evidence of rehabilitation and other post-conviction conduct.  *See United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir. 2019) (requiring consideration of post-conviction evidence and statutory sentencing factors in the context of a sentence reduction sought pursuant to § 3582(c)(2)); *see also United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021) (extending *Martin* to motions filed pursuant to § 3582(c)(1)(B)).  However, a petitioner's rehabilitation alone does not provide sufficient grounds to warrant a sentence modification.  *See* 28 U.S.C. § 994(t).[7]

**B.**    **Exhaustion of Administrative Remedies**

Although the Court generally cannot "modify a term of imprisonment once it has been imposed", the defendant may bring a motion to modify his or her sentence "after the defendant

---

> (i) extraordinary and compelling reasons warrant such a reduction . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).

[7] 28 U.S.C. § 994(t) states:

> The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.  *Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.*

28 U.S.C. § 994(t) (emphasis added).

11

has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020) ("Congress, aware of the BOP's history of extensive delays, also provided a '30-day lapse' alternative, under which a defendant may proceed directly to district court if his [or her] request is not acted on within that time."). "Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court." *Casey v. United States*, No. 4:18-CR-4 (RAJ), 2020 WL 2297184, at *1 (E.D. Va. May 6, 2020); *see also United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021) (same).

Importantly, "the defendant is not required to exhaust his [or her] administrative remedies with the BOP *at all* beyond making the initial request for compassionate release." *United States v. Ferguson*, 55 F.4th 262, 268 (4th Cir. 2022) (emphasis in original).  Consequently, there is "no reason to limit [the defendant's] motion for compassionate release in the district court to only those grounds for compassionate release he [or she] identified in his [or her] request to the BOP." *Id.*

### C.   Courts Must Find Extraordinary and Compelling Reasons Justifying Compassionate Release

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction[.]"  18 U.S.C. § 3582(c)(1)(A)(i).  Congress did not define "extraordinary and compelling reasons" in the statute.  The United States Sentencing Commission does, however, further define "extraordinary

12

and compelling reasons." U.S.S.G. § 1B1.13(b); *see United States v. Burrell*, No. 3:04-CR-364

(JAG), 2023 WL 7726404, at *4 n.7 (E.D. Va. Nov. 15, 2023).  The Sentencing Commission:

> addressed the issue in a policy statement, United States Sentencing Guideline
> § 1B1.13, which provided the BOP with several categories of extraordinary and
> compelling reasons to consider.  For years following the passage of the First Step
> Act, the Sentencing Commission failed to update § 1B1.13 to account for motions
> filed by defendants, meaning the policy did not bind the courts when presented with
> a defendant's motion for compassionate release.  A court therefore remained
> empowered . . . to consider any extraordinary and compelling reason for release
> that a defendant might raise.

*Burrell*, 2023 WL 7726404, at *4, n. 7 (cleaned up for readability) (citing *McCoy*, 981 F.3d at

276, 281–82, 284).

The 2021 Sentencing Guidelines enumerated four bases on which to evaluate a motion

for compassionate release.  U.S.S.G. § 1B1.13 cmt. n.1(A)–(D) (U.S. SENT'G COMM'N 2021)

identified four bases to establish extraordinary and compelling reasons for release:

> (A) medical conditions;
> (B) age;
> (C) family circumstances; and,
> (D) other reasons.

U.S.S.G. § 1B1.13 cmt., n.1(A)–(D).

In 2023, the United States Sentencing Commission published new sentencing guidelines

amendments (the "2023 Sentencing Guidelines Amendments" or "2023 Amendments").

Pursuant to the 2023 Amendments, the Sentencing Guidelines now identify six instructive

categories of extraordinary and compelling reasons that may allow for a sentence reduction.[8]

---

[8] *See* Appendix A, U.S.S.G § 1B1.13(b) (2023).

These are:

(1) certain medical circumstances of the defendant, such as terminal illness or the inability to receive specialized medical care while incarcerated, [U.S.S.G.] § 1B1.13(b)(1)[9];

(2) the defendant's age, *id.* § 1B1.13(b)(2)[10];

(3) the defendant's family circumstances, *id.* § 1B1.13(b)(3)[11];

(4) the fact that the defendant, while in custody, was the victim of sexual or physical abuse committed by, or at the direction of, a correctional officer, *id.* § 1B1.13(b)(4)[12];

(5) 'any other circumstances or combination of circumstances . . . similar in gravity to' the circumstances 'described in paragraphs (1) through (4).' *Id.* § 1B1.13(b)(5)[13], and,

(6) the defendant received an 'unusually long sentence,' *id.* § 1B1.13(b)(6).[14]

*United States v. Tucker*, 2023 WL 8357340, at *5 (D. Md. Dec. 1, 2023).

The United States Court of Appeals for the Fourth Circuit explained—even before the 2023 Sentencing Guidelines Amendments—that "[w]hen a defendant exercises his [or her] new right to move for compassionate release on his [or her] own behalf . . . § 1B1.13 does not apply,

---

[9] *See* App. A, at **U.S.S.G. § 1B1.13(b)(1)**; *cf.* Appendix B, **U.S.S.G. § 1B1.13 cmt. n.1(A).**

[10] *See* App. A, at **U.S.S.G § 1B1.13(b)(2)**; *cf.* App. B, at **U.S.S.G. § 1B1.13 cmt. n.1(B).**

[11] *See* App. A, at **U.S.S.G. § 1B1.13(b)(3)**; *cf.* App. B, at **U.S.S.G. § 1B1.13 cmt. n.1(C).**

[12] *See* App. A, at **U.S.S.G. § 1B1.13(b)(4).**

[13] *See* App. A, at **U.S.S.G. § 1B1.13(b)(5)**; *cf.* App. B., at **U.S.S.G. § 1B1.13 cmt. n.1(D).**

[14] *See* App. A, at **U.S.S.G. § 1B1.13(b)(6).**

and . . . § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts." *McCoy*, 981 F.3d at 281. The Fourth Circuit further illuminated that:

> [w]hen Congress authorized district courts, as a matter of discretion, to release an inmate from prison based on extraordinary and compelling reasons, it did so to introduce compassion as a factor in assessing ongoing terms of imprisonment, authorizing a district court to give greater weight to an inmate's personal circumstances—when sufficiently extraordinary and compelling—than to society's interests in the defendant's continued incarceration and the finality of judgments.

*United States v. Hargrove*, 30 F.4th 189, 197 (4th Cir. 2022).

Since *McCoy* and *Hargrove*, the 2023 Amendments have taken effect. These Amendments clarify the Commission's view on what could constitute "extraordinary and compelling reasons" for a sentence reduction under the First Step Act.[15] The *McCoy* court has noted, however, that the Guidelines, while helpful, are merely advisory and do not bind the Court. "[D]istrict courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *McCoy*, 981 F.3d at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)); *see also United States v. Davis*, 99 F.4th 647, 658 (4th Cir. 2024) (confirming that under the 2023 Amendments Courts can still "consider any extraordinary or compelling reason for release raised by a defendant").

---

[15] As other courts have observed,

> [t]he Fourth Circuit has yet to address the impact the amended Sentencing Guidelines have on *McCoy* and similar rulings or precisely how courts should apply the amended policy statement in motions for compassionate release, particularly motions filed before November 1, 2023. The Court need not reach this question, however, because [Mr. Jones] has failed to establish an extraordinary and compelling reason to reduce his sentence applying both the case law before November 1, 2023, and the amended Sentencing Guidelines.

*Burrell*, 2023 WL 7726404, at *4 n.7.

15

The United States Supreme Court has determined that "the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence[.]" *Concepcion v. United States*, 597 U.S. 481, 500 (2022). District courts within the Fourth Circuit have decided that sentencing disparities resulting from intervening changes in the Fourth Circuit's interpretation of the sentencing guidelines can constitute an "extraordinary and compelling reason" for compassionate release.[16] *See, e.g., United States v. Redd*, 444 F. Supp. 3d 717, 723–24 (E.D. Va. 2020) (finding that the "gross disparity between the sentence Mr. Redd received and the sentence he would have received after the First Step Act . . . constitute[s] [an] extraordinary and compelling reason[] that warrant[s] a reduction to Mr. Redd's sentence"); *United States v. Fennell*, 570 F. Supp. 3d 357, 363 (W.D. Va. 2021) (finding that "the significant disparity between Fennell's current sentence and the [ten years reduced] sentence he would face today for the same offense provides an extraordinary and compelling basis for a sentence reduction under § 3582(c)(1)(A)"); *United States v. Arey*, 461 F. Supp. 3d 343, 350 (W.D. Va. 2020) ("The fact that if [the defendant] were sentenced today for the same conduct he would likely receive a [forty year] lower sentence than the one he is currently serving constitutes an 'extraordinary and compelling' reason justifying potential sentence reduction under § 3582(c)(1)(A)");

---

[16] The 2023 Sentencing Guideline Amendments added subsection (c) to U.S.S.G. § 1B1.13, which provides that a change in the law, or in non-retroactive Guidelines amendments, ordinarily shall not be considered when determining whether extraordinary and compelling reasons exist. However, subsection (c) includes an important caveat: "if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction." U.S.S.G. § 1B1.13(c).

A plethora of unpublished cases follow this same reasoning. *See, e.g., United States v. Banks*, No. 3:13-CR-00003, 2022 WL 220638, at *2–3, *6 (W.D. Va. Jan. 25, 2022) (88-month difference between the low end of defendant's career offender sentencing range and the low end of the non-career offender sentencing range was "such [a] gross disparit[y] in sentencing" that it constituted an extraordinary and compelling circumstance); *United States v. Williams*, No. 1:14-CR-428 (TSE), 2021 WL 5827327, at *6–7 (E.D. Va. Dec. 8, 2021) (difference of "more than three years longer than the high end of the guidelines that would have applied under *Norman*"[17] warranted a reduction in defendant's sentence from 168 months to 125 months); *United States v. Huggins*, No. 3:11-CR-15, 2021 WL 3025459, at *4 (W.D. Va. July 16, 2021) (sentencing disparity of more than five years was a "gross disparity" and an "extraordinary and compelling" reason warranting a sentence reduction); *but see United States v. Hinton*, No. 2:15-CR-80 (MSD), 2022 WL 988372, at *5 (E.D. Va. Mar. 31, 2022) (three to six year sentencing disparity "not so drastic that it constitutes an extraordinary and compelling reason for relief"). When considering the 2018 congressional modifications to stacked penalties for § 924(c) convictions that are relevant here, the Fourth Circuit has specifically held that "courts legitimately may consider, under the 'extraordinary and compelling reasons' inquiry, that defendants are serving sentences that Congress itself views as dramatically longer than necessary or fair." *McCoy*, 981 F.3d at 275, 285–86 (quoting *Redd*, 444 F. Supp. 3d at 723).

---

[17] *United States v. Norman*, 935 F.3d 232, 237 (4th Cir. 2019) (finding that defendant was subject to a lower guideline range because a drug conspiracy conviction did not constitute a "controlled substance offense" given that the statute of conviction "criminalize[d] a broader range of conduct than that covered by generic conspiracy").

### 1.  <u>Medical Circumstances of the Defendant</u>

The 2023 Sentencing Guidelines Amendments explain in greater detail what a court should consider when considering medical circumstances as a basis for an extraordinary and compelling reason to grant compassionate release.

The relevant section of U.S.S.G. § 1B1.13(b) reads:

(1) MEDICAL CIRCUMSTANCES OF THE DEFENDANT.—
      *      *      *
(D) The defendant presents the following circumstances—

  (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

  (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

  (iii) such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § 1B1.13(b)(1)(D).

As a result of the coronavirus outbreak, "courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his [or her] prison facility." *United States v. Feiling*, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020) (collecting cases).  However, "the mere existence of COVID-19 in society . . . cannot independently justify compassionate release." *Id.* at 838 (quoting *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (internal quotation marks omitted)).

### 2.   <u>Unusually Long Sentence</u>

The 2023 Sentencing Guidelines Amendments explain in greater detail what a court should consider when considering unusually long sentences as a basis for an extraordinary and compelling reason to grant compassionate release.

The relevant section of U.S.S.G. § 1B1.13(b) reads:

> (6)   UNUSUALLY LONG SENTENCE.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).

### C.   **Courts Must Weigh the Statutory Sentencing Factors Before Granting Compassionate Release**

Even after finding a sufficient "extraordinary and compelling reason" for compassionate release, the Court must then consider the Section 3553(a) factors and any relevant post-conviction conduct before modifying a defendant's sentence.  18 U.S.C. § 3582(c)(1)(A); *Martin*, 916 F.3d at 397–98; *McDonald*, 986 F.3d at 412.  The Court must weigh factors including "the nature and circumstances of the offense and the history and characteristics of the defendant."  18 U.S.C. § 3553(a)(1).  The Court also must consider "the need for the sentence imposed . . . to promote respect for the law . . . ; to afford adequate deterrence to criminal conduct; . . . [and] to protect from the public from further crimes of the defendant."  18 U.S.C. § 3553(a)(2).  The statutory sentencing factors direct the Court to consider the kinds of sentences available and the sentencing range established for the offense.  18 U.S.C. § 3553(a)(3), (4).

### III.  Analysis

After due consideration, the Court will deny the Motion for Compassionate Release. (ECF No. 167.)  While Mr. Jones has exhausted his administrative remedies, the Court concludes that Mr. Jones does not offer any "extraordinary and compelling reasons" to support his request for release.  18 U.S.C. § 3582(c)(1)(A)(i).  Even if he had done so, the § 3553(a) factors weigh against his release.  His binding Rule 11(c)(1)(C) plea of 324 months' imprisonment amounts to 27 years, which equates to a sentence above the recommended guideline that includes just one 7-year consecutive sentence for brandishing a firearm.

**A.    Mr. Jones Has Exhausted His Administrative Remedies and There Is No Procedural Barrier to Granting his Release**

Mr. Jones has exhausted his administrative remedies.  On November 3, 2020, Mr. Jones filed a request for consideration for compassionate release with the warden of the BOP facility in which he was housed, seeking relief due to his asthma and the COVID-19 pandemic.  (ECF No. 139-2, at 3.)  The warden denied this request on November 23, 2020.  (ECF No. 139-2, at 7.)  On December 1, 2020, Mr. Jones appealed the denial of his request.  (ECF No. 139-2, at 8.)  His appeal was denied on December 16, 2020.  (ECF No. 139-3, at 2.)  The BOP's denial of Mr. Jones's request allows him to file a Motion for Compassionate Release with this Court.

While the United States concedes that Mr. Jones filed an administrative request in 2020 for compassionate release based on his health conditions and the risks posed by COVID-19, it argues that the Court should nonetheless dismiss Mr. Jones's motion for compassionate release regarding his claims that he should receive relief due to changes in the stacking provision of 18 U.S.C. § 924(c).  (ECF No. 174, at 5.)  The United States contends that Mr. Jones failed to exhaust his administrative remedies with regard to the stacking claim, as it he did not raise it in the request to the warden.  (ECF No. 174, at 5.)

In *United States v. Gray*, the district court dismissed the defendant's motion for compassionate release after the defendant made new arguments before the district court that were not presented to the BOP. No. 1:08-CR-273 (CMH), 2021 WL 3883653, at *1 (E.D. Va. Aug. 10, 2021) (citing *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021)). But in *United States v. Ferguson*, the Fourth Circuit noted that the BOP regulation set forth in 28 C.F.R. § 571.61(a)(1) "does not purport to apply to the inmate's request to the district court or limit the district court's consideration to only those reasons identified to the BOP." 55 F. 4th 262, 269 (4th Cir. 2022), *cert. denied*, No. 22-1216, 144 S.Ct. 1007 (Feb. 26, 2024).

It is true that Mr. Jones's initial request to the BOP did not include all the arguments which are present in his current Motion. However, this Court takes notice of the Fourth Circuit's observation in *Ferguson*: "in the absence of a statutory or regulatory issue exhaustion requirement, the Supreme Court has cautioned against judicially imposing such a requirement in a non-adversarial administrative proceeding." *Id.* The BOP compassionate release process is non-adversarial, and this Court declines to impose a strict exhaustion requirement and will instead consider Mr. Jones's Motion for Compassionate Release on the merits. This stance aligns with the rationale in *Ferguson* where the court "[saw] no reason to limit [the defendant's] motion for compassionate release in the district court to only those grounds for compassionate release [the defendant] identified in his request to the BOP." *Id.* at 268. Because the BOP denied Mr. Jones's request and appeal, (*see* ECF No. 139-2, at 7; ECF No. 139-3, at 2), this Court concludes that Mr. Jones meets the exhaustion requirement.

### B. Mr. Jones's Medical Conditions Do Not Constitute "Extraordinary and Compelling" Reasons for a Reduction in Sentence

Mr. Jones asserts that his particular vulnerability to the coronavirus due to his medical conditions and the conditions at FCI Williamsburg, his place of confinement, create an

extraordinary and compelling reason warranting a modification of his sentence.  (ECF No. 139, at 2–9; ECF No. 167, at 1–2.)  As previously noted, a risk of being infected by the coronavirus does not itself constitute an extraordinary and compelling reason for granting compassionate release.  *Feiling*, 453 F. Supp. 3d at 841.  Courts have found extraordinary and compelling reasons for compassionate release "when an inmate shows both a particularized susceptibility to the disease *and* a particularized risk of contracting the disease at his [or her] prison facility."  *Id.* (emphasis added).

Here, Mr. Jones's asthma makes him particularly susceptible to complications should he contract the coronavirus.  (ECF No. 139, at 2–9; ECF No. 167, at 1–2.)  The CDC has recognized asthma as a risk factor should someone contract COVID-19.  *See People with Certain Medical Conditions and COVID-19 Risk Factors*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/covid/risk-factors/?CDC_AAref_Val=https://www.cdc.gov/ coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Nov. 22, 2024).  However, the condition alone is not an "extraordinary and compelling" reason for release.  *See* 18 U.S.C. § 3553(a).  While asthma was highlighted as a risk factor early in the pandemic, "highly effective . . . vaccines dramatically affect whether an inmate's medical conditions constitute the 'extraordinary and compelling reason' required to further consider compassionate release."  *United States v. Sanders*, No. SAG-06-087, 2021 WL 1428546, at *3 (D. Md. Apr. 15, 2021) (collecting cases).  Mr. Jones received at least one COVID-19 vaccination in 2020.[18]  (ECF No. 139, at 37.)  Mr. Jones also previously had, and recovered from, COVID-19.  (ECF No. 139-1, at 3.)

---

[18] It is possible that Mr. Jones has continued to receive vaccinations, however, neither party has provided updated medical records.

Further, as of December 20, 2024, FCI Williamsburg has only three active COVID-19 cases among inmates and staff. *See BOP COVID-19 Statistics*, BUREAU OF PRISONS, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last visited Dec. 20, 2024). Clearly, FCI Williamsburg is not a "correctional facility affected or at imminent risk of being affected" by an ongoing outbreak of infectious disease. *See* U.S.S.G. § 1B1.13(b)(1)(D)(i).

The Court recognizes the grave health risks prisoners faced during the pandemic and commends nationwide efforts to promptly vaccinate prison staff and inmates.   Fortunately, Mr. Jones has received at least one dose of COVID-19 vaccination and has previously had, and recovered from, COVID-19.  (ECF No. 139, at 37; ECF No. 139-1, at 3.)  But the April 10, 2023 resolution terminating the National Emergency, based on identified reduced COVID-19 trends, suggests that COVID 19—even while reappearing in variant form—no longer requires the drastic actions necessary during its peak.[19]  The Department of Health and Human Services confirmed as much when it allowed the federal Public Health Emergency for COVID-19 to expire on May 11, 2023.[20]  Considering the foregoing, the Court concludes that no medical condition on this record amounts to an extraordinary and compelling reason for Mr. Jones's immediate release from federal imprisonment due to risks from COVID-19.

---

[19] *See* H.R.J. Res. 7, 118th Cong. (2023), https://www.congress.gov/bill/118th-congress/house-joint-resolution/7 (last visited Dec. 20, 2024).

[20] *See COVID-19 Public Health Emergency*, U.S. DEP'T OF HEALTH & HUMAN SERVS., https://www.hhs.gov/coronavirus/covid-19-public-health-emergency/index.html#:~:text=Based%20on%20current%20COVID%2D19,day%20on%20May%2011%2C%202023 (last visited Dec. 20, 2024).

**C.      Changes to "Stacking" Sentences Under 18 U.S.C. § 924(c) Are Not an <u>Extraordinary and Compelling Reason for Mr. Jones's Release</u>**

Second, Mr. Jones argues that, despite his binding plea agreement, "given the various decisions concerning stacking 924([c]) charges, it is not at all clear that [Mr.] Jones would have received a sentence of 324 months, even if charged and/or convicted of some or all of the other robberies." (ECF No. 167, at 5.)  Mr. Jones does not expressly identify the changes of law to which he refers, but the Court infers that Mr. Jones wishes the Court to apply to the facts of his case the "stacking" standard that the United States Court of Appeals for the Fourth Circuit established in *McCoy*.[21]  (*See* ECF No. 139, at 11–37 (quoting *McCoy*, 981 F.3d 271).)

**1.      <u>Mr. Jones's Sentence is Unlike Those of the *McCoy* Defendants</u>**

The First Step Act's intervening change of law can create an extraordinary and compelling reason for compassionate release when, combined with "the severity of a § 924(c) sentence," there is an "enormous disparity between that sentence and the sentence a defendant would receive today[.]"  *See McCoy*, 981 F.3d at 285.  In *McCoy*, the defendants were each convicted of multiple 924(c) violations with escalating "stacked" sentences, "which exposed the defendants to additional mandatory minimums and led to sentences ranging from 35 to 53 years

---

[21] In his *Pro Se* Motion for Compassionate Release, Mr. Jones does not expressly argue that changes to § 924(c) "stacking" practices are an extraordinary and compelling reason for his release. (*See* ECF No. 139.)  However, he does include a section entitled, "VI. Affirmed Published Opinions in Reference to 'Stacking Sentences' Under 924(c)." (*See* ECF No. 139, at 11.)  The entirety of this section appears to comprise only the text of an appellate court opinion, with no identification of the text's source and no independent discussion of its contents. (*See* ECF No. 139, at 11–37.)  Although this Court has not cross-referenced its every word, the text appears to be that of the *McCoy* opinion, reproduced verbatim. *Compare* (ECF No. 139, at 11–37), *with McCoy*, 981 F.3d.

In his subsequent Motion for Compassionate Release and Reply, Mr. Jones does expressly claim § 924(c) "stacking" changes as justification for his release, but he does not cite any supporting caselaw. (*See* ECF No. 167, at 5; ECF No. 175, at 1.)

of imprisonment." 981 F.3d at 274.  If the *McCoy* defendants had been sentenced after

"stacking" practices ended, they would have received terms of imprisonment that were

"dramatically shorter – in most cases, by 30 years – than the ones they received." *Id.*  Moreover,

"the fact that § 924(c)'s mandatory minimums were the 'lion's share' of [the *McCoy*

defendants'] sentence lengths" was a persuasive factor in granting their compassionate release.

*United States v. Guess*, 576 F. Supp. 3d 370, 374 (E.D. Va. 2021) (citing *McCoy*, 981 F.3d at

277–79, 286).

Here, unlike in *McCoy*, Mr. Jones did not receive "stacked" 924(c) sentences, as he

pleaded guilty to only one § 924(c) charge.  (*See* ECF No. 32 ¶ 1.)  Mr. Jones agreed to the 84-

month mandatory minimum sentence, making his § 924(c) sentence comprise roughly 26% of his

324-month total prison term, which is far from "the lion's share" of his sentence.  (*See* ECF No.

32 ¶ 3.)  Therefore, the cessation of "stacking" 924(c) sentences is not an extraordinary and

compelling reason for his release.

### 2. Eliminating the Possibility of "Stacking" Does Not Create an Extraordinary and Compelling Reason to Reduce Mr. Jones's Sentence

Despite Mr. Jones's lack of "stacked" § 924(c) sentences, he maintains that the practice's

elimination is an extraordinary and compelling reason for his release because his "plea was

negotiated . . . with the underlying assumption that stacking the firearm sentences would occur if

the case went to trial or [if Mr.] Jones . . . [pleaded] guilty without a plea agreement."  (ECF No.

175, at 1.)  According to Mr. Jones's logic, if he were sentenced today, he would likely receive a

prison term within his Guidelines range because the United States would no longer hold

"stacking" as a plea-agreement bargaining chip.  (ECF No. 175, at 1.)

At least one other district court in this Circuit has refused to consider such a contention when the defendant received only one conviction under 18 U.S.C. § 924(c). *See Bostic v. United States*, No. 4:08-cr-00060-001-TLW-1, 2023 WL 6218206, at *6 (D.S.C. Sept. 25, 2023) ("Bostic cannot establish 'extraordinary and compelling reasons' based on . . . changes to the 'stacking' of § 924(c) convictions because his sentence is not the result of 'stacked' § 924(c) convictions.") Like *Bostic*, Mr. Jones's plea did not involve "stacked" sentences.

But this Court does not dismiss Mr. Jones's "stacking" arguments on this basis alone, as the United States's inability to pursue "stacked" § 924(c) sentences almost certainly would change both parties' plea-negotiation calculus. Given Mr. Jones's particular circumstances, however, the Court rejects the notion that such updated calculus would clearly counsel Mr. Jones to reject his binding Plea Agreement as it stands. Assuming, *arguendo*, that Mr. Jones would refuse his current plea agreement absent the looming threat of "stacked" § 924(c) sentences, the Court remains unconvinced that doing so would result in Mr. Jones receiving a sentence within his original guidelines. In all robberies, three or four armed gunmen entered with masks and gloves, and used threats while they pointed guns at the victims. And, in at least two robberies, the perpetrators specifically threatened to use the guns. Mr. Jones also entered his first robbery in this spree with two previous burglary (and revocations of release) on his record.[22] All this weighs against a finding that the sentence should be reduced.

The Court must place Mr. Jones's claims about the significant pressure of receiving stacked sentences in the greater context of the circumstances under which the plea was negotiated. During the first masked and armed robbery, a clerk was threatened with a gun

---

[22] Because of this conduct, Mr. Jones was ordered to pay restitution under the Mandatory Victim Restitution Act of 1996. (ECF No. 102, at 3; ECF No. 55 ¶ 21.)

pointed at her that she would be shot if she touched any buttons to alert police.  (ECF No. 33
¶ 4.)  That accomplice stood in the front of the store.  At the same time, near the pharmacy in the
back, guns were pointed at an employee while one accomplice told the other to "cap this b**ch."
(ECF No. 33 ¶ 5.)  Masked and armed men robbed six additional places brandishing firearms and
attempted to rob another.

   Thus, although the elimination of "stacking" would preclude the United Stated from
pursuing the escalated 25-year term of imprisonment for each additional § 924(c) violation
charged, the United States would remain free to pursue multiple § 924(c) charges with respective
seven-year consecutive sentences.  *See* First Step Act, § 403(a), 132 Stat. 5194 (codified as
amended at 18 U.S.C. § 924(c)).  Mr. Jones admits to committing seven robberies and one
attempted robbery in two states over a one-month period, all of which involved the brandishing
of a firearm.  (*See* ECF No. 33 ¶¶ 3, 10–11.)  This torrent of violent conduct would certainly
affect this Court's, and any court's, evaluation of his sentence, even absent stacking.  Indeed,
these eight violent acts are nearly twice the four Bostic committed that led to the binding plea in
that case.  Just those four robberies led the *Bostic* court to observe that the plea agreement to a
significantly long period of incarceration in that case clearly "was crafted in light of Bostic's
violent conduct in connection with the armed robberies and the violence [] used in committing
those robberies."  *Bostic*, 2023 WL 6218206, at *6.  So too here.

   Pursuing "stacked" § 924(c) charges was far from the only leverage point that the United
States held during the parties' original plea negotiations.  First, Mr. Jones admitted to
committing seven Hobbs Act Robberies and one attempted Hobbs Act Robbery, three of which
involved abduction and one of which involved the theft of a controlled substance.  (*See* ECF No.
55 ¶¶ 17–20.)  As charged, these factors enhanced their respective robberies' offense level, but

the United States presumably could have chosen to prosecute these offenses as discrete counts. (*See* ECF No. 55 ¶¶ 33–35.)

If Mr. Jones were sentenced today (or then on an unstacked basis), the United States would be free to charge him with § 924(c) violations for all seven completed robberies detailed in the agreed-upon Statement of Facts, each carrying a consecutive seven-year sentence. (*See* ECF No. 33 ¶¶ 3, 10–11.) In such a scenario, Mr. Jones would be facing a potential sentence of 672 months', or 56 years', imprisonment on § 924(c) counts alone. The Court cannot conclude that the threat of stacked sentences would outweigh a decision to agree to a binding sentence of forty-three percent of that worst case scenario.

Second, through his Plea Agreement, Mr. Jones secured the Middle District of North Carolina's and the Eastern District of North Carolina's relinquishment of jurisdiction over robberies that Mr. Jones admits to committing in Durham, North Carolina and Apex, North Carolina, respectively. (*See* ECF No. 32 ¶ 12.) If each jurisdiction had pursued their own case individually, Mr. Jones would have faced a potential 28 year sentence in the Eastern District and, separately, in the Middle District of North Carolina. Both could have been consecutive to any Virginia sentence, and to each other. If just these three cases had been prosecuted separately, Mr. Jones would face a possible 84-year sentence.

Finally, this Court's extensive colloquy during Mr. Jones's change of plea hearing – during which he repeatedly acknowledged the binding nature of the 324-month sentence *on him and the Court*, plainly evinces a lack of extraordinary and compelling reasons to grant his motion. *Bostic*, 2023 WL 6218206, at *6; (ECF No. 32).

As other district courts of this Circuit have said, "'not *all* defendants convicted under § 924(c) should receive new sentences.'" *See, e.g.*, *United States v. Guess*, 576 F. Supp. 3d at

374 (quoting *McCoy*, 981 F.3d at 287) (emphasis in original). Rather, it is the job of the court to perform "individualized assessments of each defendant's sentence" to determine whether extraordinary and compelling circumstances exist. *McCoy*, 981 F.3d at 286. None exist here. The Court cannot fully identify or weigh every factor the parties considered in negotiating Mr. Jones's Plea Agreement, (ECF No. 32), but it need not do so. Ultimately, the changes to the "stacking" provision of § 924(c) would not significantly undermine the United States' bargaining power in a plea negotiation undertaken today, and the Court finds that this change to sentencing law does not create an extraordinary and compelling reason to reduce Mr. Jones's sentence.

**D.      The 3553(a) Factors Do Not Support a Reduction in Mr. Jones's Sentence**

Although Mr. Jones did not satisfy the requirement for an "extraordinary and compelling" reason for compassionate release, even if he had, the Court concludes that the § 3553(a) factors weigh against his release. This Court speaks to those factors in the interest of creating a full record. *See* 18 U.S.C. § 3553(a).

Upon review, the nature and circumstances of Mr. Jones's underlying convictions demonstrate that he presents an ongoing threat to the public and no conditions of release would sufficiently assure the safety of the community at this time. This conduct is discussed in significant detail in paragraphs 2 through 8 of the Statement of Facts, which the Court incorporates by reference. (ECF No. 33 ¶¶ 2–8.) While this order previously set forth that conduct, the Court will highlight the relevant portions again. As noted, Mr. Jones was involved in five robberies, and one attempted robbery, in the Eastern District of Virginia over a one-month period of time. In each instance Mr. Jones and his co-conspirators entered into businesses and held employees at gunpoint while demanding money. Not only did Mr. Jones participate in these crimes, but he helped organize them. This was also not the first time Mr. Jones committed such

29

acts. Between April 16, 2010 and April 30, 2010, Mr. Jones participated in the commission of

six burglaries, for which he pleaded guilty and was sentence to "10 years' imprisonment, with 9

years and 6 months suspended, conditioned upon 60 years of good behavior and remaining drug

free; a[and] indefinite supervised probation." (ECF No. 55 ¶ 89.) The nature and circumstances

of this crime spree and the role Mr. Jones played in it, along with his prior criminal history,

weigh strongly against early release.

Further, Mr. Jones does not propose conditions of release that would ensure the safety of

the community. Mr. Jones's release plan is to live with his father in Illinois. (ECF No. 139, at

38.) He offers no information other than that fact. This does not convince the Court that Mr.

Jones will not pose a danger to the public or that the safety of the community will be protected.

The Court thus finds that the nature and circumstances of Mr. Jones' offense, the totality of his

record, and the need to protect the public outweigh granting his request for early release.

Mr. Jones next avers that his history and characteristics while incarcerated demonstrate

his rehabilitation, highlighting his participation in various educational, therapeutic, and

vocational courses as well as his work program performance. (ECF No. 139, at 38.) Mr. Jones

also states that "[h]e has been totally free of disciplinary infractions and is considered to be a

model prisoner." (ECF No. 139, at 38.) However, "[r]ehabilitation of the defendant alone shall

not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). Furthermore,

Mr. Jones does not take responsibility for (because he does not mention or report them) the three

disciplinary infractions he received, including "Possessing Unauthorized Item and Being

30

Unsanitary or Untidy on April 2, 2018; and Refusing Work/Program Assignment on September 26, 2023[,]" which resulted in a loss of privileges.[23]  (ECF No. 201, at 1.)

Although Mr. Jones's accomplishments while incarcerated are laudable, they do not outweigh the continuing need for the sentence imposed to reflect the seriousness of the offense for which Mr. Jones was convicted.  Mr. Jones's 324-month sentence is sufficient but not greater than necessary to reflect the seriousness of his conduct.  Despite the achievements of Mr. Jones while incarcerated, the Court concludes that the record before it does not justify Mr. Jones's early release from federal imprisonment.

### IV.  Conclusion

For the reasons explained above, the Court will deny the Motion for Compassionate Release.  (ECF No. 167.)  The Court will deny as moot Mr. Jones's *pro se* Motions for Compassionate Release.  (ECF Nos. 139, 140.)

An appropriate Order shall issue.

Date: 12\20\2024
Richmond, Virginia

/s/
M. Hannah Lauck
United States District Judge

---

[23] The disciplinary infraction on September 26, 2023 occurred after Mr. Jones filed his Motion for Compassionate Release.  However, he fails to identify the two infractions he received on April 2, 2018.

31